IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 1:22-cr-000090-DDD

UNITED STATES OF AMERICA,

    Plaintiff,

v.

ED DEAN JAGERS III,

    Defendant.

## PLEA AGREEMENT

The United States of America (the government), by and through Bryan David Fields, Assistant United States Attorney for the District of Colorado, and the defendant, Ed Dean Jagers III, personally and by counsel, Kevin McGreevy, Esq., submit the following Plea Agreement pursuant to D.C.COLO.LCrR 11.1. This agreement binds only the Criminal Division of the United States Attorney's Office for the District of Colorado and the defendant.

### I.   AGREEMENT

**A. Defendant's Plea of Guilty:**

1. The defendant agrees

    (a) to waive indictment and plead guilty to an Information charging a violation of 18 U.S.C. § 371;

    (b) to waive certain appellate and collateral attack rights, as explained in detail below.

    (c) cooperate as more fully described below;

**COURT EXHIBIT 1**

  (d) be liable for restitution to the United States in the amount of $11,372.50 which could include joint and several liability for some or all of the amount with other as yet uncharged co-conspirators;

  (e) agree not to contest forfeiture as more fully described below; etc.

**B. Government's Obligations:**

2. This agreement is made pursuant to Fed.R.Crim.P.11(c)(1)(A). The government agrees not to bring other charges against the defendant based on information currently known to the United States Attorney's Office, District of Colorado concerning damage to rain gauges owned or operated by the United States government. Should the plea of guilty be vacated on the motion of the defendant, the government may, in its sole discretion, move to reinstate any or all of the counts dismissed pursuant to this agreement and potentially file a superseding indictment.

3. Provided the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, the government agrees that the defendant should receive a two-level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).

**C. Defendant's Waiver of Appeal:**

4. The defendant is aware that 18 U.S.C. § 3742 affords the right to appeal the sentence, including the manner in which that sentence is determined. Understanding this, and in exchange for the concessions made by the government in this agreement, the defendant knowingly and voluntarily waives the right to appeal any matter in connection with this prosecution, conviction, or

sentence (including the restitution order), unless it meets one of the following criteria:

 (a) the sentence exceeds the maximum sentence provided in the statute of conviction, 18 U.S.C. § 371;

 (b) the sentence exceeds the top end of the advisory guideline range from the Sentencing Guidelines that applies for the defendant's criminal history (as determined by the district court) at a total offense level of 8; or

 (c) the government appeals the sentence imposed.

If the first criteria applies, the defendant may appeal only the issue of how his sentence exceeds the statutory maximum sentence. But if one of the latter two criteria apply, the defendant may appeal on any ground that is properly available in an appeal that follows a guilty plea.

 5. The defendant also knowingly and voluntarily waives the right to challenge this prosecution, conviction, or sentence (including the restitution order) in any collateral attack (including, but not limited to, a motion brought under 28 U.S.C. § 2255). This waiver provision does not prevent the defendant from seeking relief otherwise available in a collateral attack on any of the following grounds:

 (a) the defendant should receive the benefit of an explicitly retroactive change in the sentencing guidelines or sentencing statute;

 (b) the defendant was deprived of the effective assistance of counsel; or

 (c) the defendant was prejudiced by prosecutorial misconduct.

 6. The Defendant also waives the right to appeal any sentence imposed below or within the Guideline range upon a revocation of supervised release in this

case number, except where the defendant unsuccessfully objects to the grade of violation applied by the court during the district court revocation proceedings. In that event, this waiver does not apply and the defendant may appeal the sentence imposed upon a revocation of supervised release, even if that sentence falls below or within the guideline range calculated by the court.

7. The Defendant also waives the right to appeal the denial of any motion filed under 18 U.S.C. § 3582(c)(1)(A) where such denial rests in any part upon the court's determination that a sentence reduction is not warranted under the factors set forth in 18 U.S.C. § 3553(a). This waiver does not apply to an appeal of a denied § 3582(c)(1)(A)(i) motion where the district court, in denying the motion on § 3553(a) grounds, failed to consider the facts allegedly establishing extraordinary and compelling circumstances as part of its § 3553(a) analysis.

**D. Defendant's Cooperation:**

8. The defendant agrees to provide truthful, complete, and accurate information relating to any matter about which the defendant may possess knowledge, information, or materials being investigated by the government, and agrees to cooperate fully with the government. Lies, deliberate falsehoods or misleading information provided during the cooperation with the government would be grounds for rescission of this plea agreement as well as possible further prosecution for perjury or false statements. This cooperation will include, but is not limited to, the following:

> (a) The defendant agrees to be fully debriefed, and to attend all meetings at which his presence is requested, concerning his participation in

and knowledge of all criminal activities.

(b) The defendant agrees to affirmatively furnish to the government all documents and other material that may be relevant and that are in the defendant's possession or control.

(c) The defendant agrees to testify fully and truthfully at any proceeding in the District of Colorado or elsewhere as requested by the government.

(d) The defendant agrees to at all times give complete, truthful, and accurate information and testimony and to fully and truthfully disclose all information with respect to the activities of the defendant and others concerning all matters about which the government inquires.

(e) The defendant consents to postponements of his sentencing, as requested by the government and as approved by the Court. Should the defendant be required to provide testimony at a time subsequent to his sentencing in this case and should the defendant fail, at a later date, to comply with the obligation to testify, the government could seek to recharge him on any and all counts which were dismissed as part of this plea agreement.

(f) The defendant agrees he will not violate federal, state, or local law while awaiting sentencing in this case. The defendant further agrees to abide by all the terms and conditions of any bond executed in the defendant's case. The government may consider any such violations a material breach of his agreement to cooperate with the government.

9. The government agrees that any information and testimony given by the defendant pursuant to this agreement will not be used against the defendant, either directly or indirectly, in any criminal case except for prosecutions for perjury, making a false statement, obstruction of justice, or for impeachment. Information and testimony will not be used against the defendant pursuant to Section 1B1.8 of the Sentencing Guidelines. Any information and testimony relating to the defendant's

involvement in crimes of violence, as defined in Title 18, United States Code, Section 16, is excluded from this agreement.

10. The defendant agrees that if the government can show that the defendant lied, made deliberate falsehoods, or intentionally provided misleading information to the government or law enforcement authorities, or if the defendant does not fulfill the terms of or does not complete the cooperation as required under this agreement, then any information or testimony which the defendant has provided in connection with the above referenced cooperation can be used in any prosecution against the defendant. If the government alleges such conduct, it will have the burden of establishing the alleged conduct at a separate hearing by a preponderance of the evidence.

11. The parties understand and agree that the government's determination of whether the defendant has cooperated fully pursuant to this agreement and provided substantial assistance and the government's assessment of the value, truthfulness, completeness, and accuracy of the cooperation, are within the government's sole discretion. The defendant's full cooperation, in the form of proffers and testimony, if required, has not yet been completed. The nature and extent of the defendant's cooperation, as well as the final requested departure, will be set forth in the government's §5K1.1 motion. The parties understand and agree whether to file a motion under §5K1.1 is entirely within the discretion of the government. Moreover, the parties agree that the defendant shall not be entitled to withdraw his plea if the

government determines that the defendant has not fully cooperated and provided substantial assistance.

## II. ELEMENTS OF THE OFFENSES

12. The parties agree that the crime of conspiracy charged in the Information, a violation of 18 U.S.C. § 371, has the following elements:

    (a) *First*, that the defendant agreed with at least one other person to violate the law;

    (b) *Second*, that one of the conspirators engaged in at least one overt act furthering the conspiracy's objective;

    (c) *Third*, that the Defendant knew the essential objective of the conspiracy;

    (d) *Fourth*, that there was interdependence among the members of the conspiracy, that is, members in some way or manner intended to act together for their shared mutual benefit within the scope of the conspiracy charged.[1]

13. The parties further agree that the object of the conspiracy — to willfully injury or commit a depredation on a property of the United States in violation of 18 U.S.C. § 1361 — has the following elements:

    (a) *First,* the defendant injured and committed a depredation against property;

    (b) *Second,* the defendant did so willfully;

    (c) *Third,* the property involved was property of the United States, or of any department or agency thereof;

    (d) *Fourth,* the injury or depredation exceeded a sum of $1,000.[2]

---

[1] Tenth Circuit Pattern Jury Instruction No. 2.19 (2021 ed.).

[2] *United States v. Krause*, 914 F.3d 1122, 1127 (8th Cir. 2019); United *States v. Justice*, 646 F. App'x 642, 644 (10th Cir. 2016).

### III. STATUTORY MAXIMUM SENTENCE

14. The maximum sentence for a violation of the count in the Information is: not more than 5 years' imprisonment; maximum term of supervised release 3 years; maximum fine $250,000; $100 mandatory victim's fund assessment fee; restitution in the amount of $11,372.50.

### IV. COLLATERAL CONSEQUENCES

15. The conviction may cause the loss of civil rights, including, but not limited to, the rights to possess firearms, vote, hold elected office, and sit on a jury.

### V. STIPULATION OF FACTS

16. The factual basis for this plea is set forth below. Because the Court must, as part of its sentencing methodology, compute the advisory guideline range for the offense of conviction, consider relevant conduct, and consider the other factors set forth in 18 U.S.C. § 3553, additional facts may be included below which are pertinent to those considerations and computations. To the extent the parties disagree about the facts set forth below, the stipulation of facts identifies which facts are known to be in dispute at the time of the execution of the plea agreement.

17. This stipulation of facts does not preclude either party from presenting non-contradictory additional facts which are relevant to the Court's guideline computation, to other 18 U.S.C. § 3553 factors, or to the Court's overall sentencing decision.

18. The parties stipulate that the following facts are true and correct:

19. **The relevant conduct in this case began no later than**

**approximately July 2016 and continued to September 2021.**

20. The National Oceanic and Atmospheric Administration National Weather Service used various devices to collect climate data, including the Automated Surface Observing System (ASOS). ASOS served as the nation's primary surface weather observing network and supports forecast activities, aviation operations, and the needs of the meteorological, hydrological, and climatological research communities. ASOS units were originally deployed with the Heated Tipping Bucket (HTB) rain gauge as the precipitation accumulation sensor. The All Weather Precipitation Accumulation Gauge (AWPAG) measures precipitation by weighing total accumulation using strain gauge technology to convert weight to an electrical signal. Only select NWS ASOS units were equipped with the AWPAG. At the time of the events described in this plea agreement, there were currently more than 900 ASOS sites in the United States to include three NOAA-NWS ASOS units in southeastern Colorado. One was located in the Springfield Comanche National Forest in Baca County (Unit ID: KSPD) at the Little Washington Work Center. It is colloquially known as the "Little Washington" rain gauge. A second was located at the La Junta Municipal Airport in Otero County (Unit ID: KLHX) and is colloquially known as the La Junta Airport rain gauge. The third was near Lamar Colorado (Unit ID: KLAA). In addition to those AWPAG gauges, the National Weather Service operated rain gauges in Coolidge, Kansas (Unit ID: COOK1); Syracuse, Kansas (Unit ID: SYRK1); Elkhart, Kansas (Unit ID: EHA), Kendall, Kansas (Unit ID: KENK1); Walsh, Colorado (Unit ID:

WLS01); Kim, Colorado (Unit ID: KCGC2), Ellicott, Colorado (Unit ID: BSQC2), and Ordway, Colorado (Unit ID: ORDC2).

21.     The defendant was a resident of Colorado. Co-Conspirators 1-3 ("CC-1, CC-2 and CC-3), whose identities are known to the parties, were also residents of Colorado.

22.     On a date unknown, but no later than July 2016, the defendant agreed with CC-1 to tamper with the Little Washington rain gauge while CC-1 tampered with the Lamar rain gauge. It was part of the agreement, known to the defendant, that CC-2 would tamper with rain gauges elsewhere in Colorado. Sometime after the defendant agreed with CC-1 to tamper with rain gauges, CC-3 agreed to a help CC-2 tamper with rain gauges in southeast Colorado.

23.     The conspirators used various means and methods to tamper with rain gauges. The defendant used a pan, sometimes referred to as a "pie tin" or a "cake pan" to cover the Little Washington rain gauge during precipitation events. CC-1 typically used an agricultural disc blade to cover up Lamar rain gauge. CC-2 also covered gauges with agricultural devices, but used other means as well, such as filling gauges with silicone to prevent them from collecting moisture, cutting wires on the gauges, or detaching and then tipping over the bucket designed to collect precipitation. CC-3 covered gauges with agricultural devices, used a hammer and tap to punch holes in the collection mechanism and removed the collection bowl from gauges. The defendant was not aware of the specific methods that were used by CC-2 and CC-3, but he knew that others involved in the conspiracy were

tampering with rain gauges to accomplish its objective, which was to prevent those gauges from operating. Each of these gauges was the property of the United States.

24. The chart below identifies the tampered rain gauge according to its National Weather Service (NWS) identification code and name, the date the tampering was identified, how the tampering was reported, the suspected method of tampering, and the government agency that owned the rain gauge. The date the tampering was discovered is not necessarily the date of the actual tampering, which would have occurred on a prior unknown date:

| Gauge | Date | Reporter | Suspected Method | Owner |
|---|---|---|---|---|
| SYRK1 Syracuse, Kansas | 01/01/17 | USGS Employee | Wires Cut | USGS |
| COOK1 Coolidge, Kansas | 02/22/17 | USGS Employee | Wires Cut | USGS |
| KLHX La Junta, Colorado | 03/21/17 | NWS Employee | Hole punched in brass collector | FAA |
| ORDC2 Ordway, Colorado | 03/28/17 | NWS Employee | Standard Rain Gauge (SRG) missing and, after replacement, was found to have a hole puncture | NWS |
| SYRK1 Syracuse, Kansas | 03/28/17 | USGS Employee | Silicone found in funnel | USGS |
| COOK1 Coolidge, Kansas | 03/29/17 | USGS Employee | Silicone found in funnel | USGS |
| KSPD Springfield, Colorado | 03/29/17 | NWS Employee | "Cake pan" found covering gauge | NWS |

| | | | | |
|---|---|---|---|---|
| BSQC2 Ellicott, Colorado | March 2017 | Cooperative Observer Program volunteer | Standard Rain Gauge (SRG) missing | NWS |
| KSPD Springfield, Colorado | 04/03/17 | Baca County Sheriff's Office (BCSO) Deputy | "Cake pan" found covering gauge | NWS |
| KLHX La Junta, Colorado | 04/05/17 | NWS Employee | Silicone found in bucket | FAA |
| WLS01 Walsh, Colorado | 04/05/17 | Colorado State University Employee | Silicone found in funnel | NWS |
| EHA Elkhart, Kansas | Sometime before 04/06/17 | NWS Employee | Metal Plate | NWS |
| EHA Elkhart, Kansas | Sometime before 04/06/17 | NWS Employee | Silicone in Funnel | NWS |
| KLHX La Junta, Colorado | 04/21/17 | NWS Employee | Silicone found in bucket | FAA |

25. The defendant placed the cake pan found on the Springfield rain gauge that was found on March 29, 2017. When he came back for the pan, saw that it was missing, and presumed his tampering had been noticed and the pan taken away by someone else, the defendant notified CC-1 and CC-2.

26. The defendant stipulates and agrees that the conspiracy caused damage to government rain gauges in a total amount of $11,372.50.

27. On April 16, 2021 the defendant was approached by agents with the Federal Bureau of Investigation and Department of Commerce Office of Inspector General. He initially agreed to cooperate with the agents by making a consensual recording with a previously unknown co-conspirator. However, at the beginning of an in-person meeting with the suspect, the defendant willfully obstructed and

impeded the government's investigation by alerting the suspect to the presence of the audio-recording device, which caused the suspect to avoid speaking about the tampering.

## VI. ADVISORY GUIDELINE CALCULATION

28. The parties understand that the imposition of a sentence in this matter is governed by 18 U.S.C. § 3553. In determining the particular sentence to be imposed, the Court is required to consider seven factors. One of those factors is the sentencing range computed by the Court under advisory guidelines issued by the United States Sentencing Commission. In order to aid the Court in this regard, the parties set forth below their estimate of the advisory guideline range called for by the United States Sentencing Guidelines. To the extent that the parties disagree about the guideline computations, the recitation below identifies the matters which are in dispute.

29. The Guideline calculation below is the good-faith estimate of the parties, but it is only an estimate. The parties understand that the government also has an independent obligation to assist the Court in making an accurate determination of the correct guideline range. To that end, the government may argue that facts identified in the presentence report, or otherwise identified during the sentencing process, affect the estimate below.

    (a) Under Section 2X1.1, cross-referencing 2B1.1, the base offense level is 6.

    (b) Under Section 2B1.1(b)(1)(C) the offense level is increased by 2 because the losses were more than $6,500 but less than $15,000.

(c) Under Section 3C1.1 the offense level is increased by 2 because the defendant willfully attempted to obstruct and impede the administration of justice with respect to the investigation of the offense charged in the Information.

(d) The adjusted offense level is 10.

(e) The parties agree that so long as the defendant does not engage in prohibited conduct or otherwise implicate USSG §§ 3C1.1 and 3E1.1, cmt. n.4 between the guilty plea and sentencing in this case, he should receive a two level reduction for acceptance of responsibility pursuant to USSG § 3E1.1(a).
The resulting total offense level is 8.

(f) The parties understand that the defendant's criminal history computation is tentative and based on the defendant's prior convictions. The parties believe the defendant is in criminal history category I.

(g) The career offender/criminal livelihood/armed career criminal adjustments do not apply.

(h) The advisory guideline range resulting from these calculations is 0-6 months. However, in order to be as accurate as possible, with the criminal history category undetermined at this time, the offense level estimated above could conceivably result in a range from 0 months (bottom of Category I) to 18 months (top of Category VI). The guideline range would not exceed, in any case, the cumulative statutory maximums applicable to the counts of conviction.

(i) Pursuant to guideline § 5E1.2, assuming the estimated offense level above is correct, the fine range for this offense would be $2,000 to $20,000, plus applicable interest and penalties.

(j) Pursuant to guideline § 5D1.2, if the Court imposes a term of supervised release, that term at least 1 year, but not more than 3 years.

(k) The defendant stipulates and agrees that he shall owe restitution to the United States in the amount of $11,372.50 joint and several with other coconspirators.

30. The parties understand that the Court is free, upon consideration and

proper application of all 18 U.S.C. § 3553 factors, to impose that reasonable sentence which it deems appropriate in the exercise of its discretion and that such sentence may be less than that called for by the advisory guidelines (in length or form), within the advisory guideline range, or above the advisory guideline range up to and including imprisonment for the statutory maximum term, regardless of any computation or position of any party on any 18 U.S.C. § 3553 factor.

## VII. ENTIRE AGREEMENT

31. The agreement disclosed to the Court is the entire agreement. There are no other promises, agreements or "side agreements," terms, conditions, understandings, or assurances, express or implied. In entering this agreement, neither the government nor the defendant has relied, or is relying, on any other terms, promises, conditions or assurances.

Date: 5/18/22

ED DEAN JAGERS III
Defendant

Date: 5/18/22

Kevin McGreevy, Esq.
Attorney for Defendant

Date: 5/18/22

Bryan David Fields
Assistant U.S. Attorney